UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAMON CRIST,<br><br>               Plaintiff,<br><br>   v.<br><br>DEPUTY MILLER; DEPUTY RYAN CIRILO; DEPUTY PADLO; DEPUTY LOVE; DEPUTY SCRUGGS; and DEPUTY JOHN DOE,[1]<br><br>               Defendants. | Case No. 1:25-cv-00495-AKB<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

      The Clerk of Court conditionally filed Plaintiff Damon Crist's initial complaint because of Plaintiff's status as an inmate and in forma pauperis request, and Plaintiff has since filed a First Amended Complaint ("FAC"), *see* Dkt. 10. A "conditional filing" means a plaintiff must obtain Court authorization to proceed. Upon screening, the Court must dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

---

[1] "John Doe" is not named in the caption of Plaintiff's First Amended Complaint, but he is identified as a party in the body of the complaint. Further, Plaintiff asserts one of his claims against a Deputy "Roe," whose identification as such might have been referring to Defendant Doe. In any event, it is clear Plaintiff intended to name at least one unidentified individual as a defendant in this case.

Having reviewed the record, the Court concludes that the FAC fails to state a claim upon which relief may be granted. Accordingly, the Court enters the following Order directing Plaintiff to file a second amended complaint if Plaintiff intends to proceed.

**1.     Standards of Law for Screening Complaints**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**2.     Factual Allegations**

At the time Plaintiff filed this action, he was a pretrial detainee held in the Ada County Jail.[2] Plaintiff has several civil rights cases pending in this Court against various jail officials. Plaintiff alleges Defendants have engaged in a years-long campaign to retaliate against him for filing those cases and for using the jail's administrative grievance process.

In July 2023, Plaintiff and two other inmates were approved to be transferred to less restrictive housing. Defendants Padlo, Love, and Cirilo were "involved with Plaintiff's housing determinations." FAC at 8. The other inmates were later transferred to less restrictive housing, but Plaintiff stayed in the more restrictive unit for an additional month and a half. *Id*. at 8, 11. Plaintiff asked a non-defendant deputy why he was still in the unit after the others were transferred, and the deputy responded that Plaintiff "should already know why." *Id*. at 11. Plaintiff believes this was "an insinuation to Plaintiff's litigation and administrative grievance filings." *Id*.

After Plaintiff was approved to be transferred to lower custody housing but before he was transferred, Plaintiff wrote a letter to Defendant Deputy Miller. The letter stated Plaintiff feared being transferred "around 'gang members' and 'career offenders.'" *Id*. at 4. Plaintiff's fear was based on the practice of "paper checking," which refers to inmates asking each other what their charges are. Plaintiff had been charged with a sex offense and did not want other inmates to know about this charge, as other inmates may engage in "severe violence" against inmates with such charges. *Id*.

---

[2] It appears Plaintiff has since been convicted of one of the charges against him and was sentenced to time served. *See Ada County iCourt Database*, https://preview.icourt.idaho.gov/case/CR01-22-29153/county/Ada (accessed Dec. 16, 2025) (judgment of conviction on one count of possession of a controlled substance, entered Dec. 15, 2025).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

Miller read Plaintiff's letter, laughed, and "mockingly pointed at content within the letter" to an unidentified deputy while stating that another deputy, who was a defendant in one of Plaintiff's other civil cases, was "going to love this." *Id*. at 5. Miller did not ask Plaintiff any questions about the letter or his fear of transfer.

In September 2023, Plaintiff was attacked by another inmate.[3] The inmate told Plaintiff, "I read your discovery in Dorm 5, you're a . . . sex offender." *Id*. at 6. Plaintiff then learned that, as early as June 2023, documents from Plaintiff's discovery in his criminal case had been circulating among inmates in Dorm 5. Plaintiff states he had never received any of this discovery, which is unsurprising—such discovery is generally provided to a criminal defendant's attorney, not to the defendant himself. Plaintiff alleges, without any factual support, that unidentified "jail deputies" were "aware" that other inmates were viewing Plaintiff's discovery documents. *Id*. at 2.

Nearly three months later, Plaintiff reported the attack to Deputy Scruggs and asked that any video evidence of the incident be preserved. *Id*. at 6. Plaintiff told Scruggs he was seeking preservation of the video because he believed "deputies were responsible for the attack." *Id*. Scruggs then ended the interview.

Plaintiff claims Scruggs "attempted to cover-up the attack" by determining the video did not show the attack. Plaintiff believes Scruggs did this "to protect his friend deputies involved with orchestrated high-risk gang member transfers." *Id*. at 7. Scruggs allegedly threatened Plaintiff with discipline if he kept "requesting evidence preservation of the video," though it does not appear Plaintiff was actually disciplined. *Id*. Another deputy later found the video of the attack.

---

[3] The attack occurred while Plaintiff was still housed in the higher-custody housing unit. *See* FAC at 8 (stating Plaintiff had not been transferred by November 8, 2023).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 4

Plaintiff seeks damages for alleged civil rights violations. *Id*. at 12. In Claim 1 of the FAC, Plaintiff contends Defendant Miller and an unidentified defendant failed to protect him from the September 2023 attack. *Id*. at 9. This claim is based on these Defendants' alleged (1) failure to ensure that Plaintiff's criminal discovery was not circulated among other inmates and (2) failure to investigate the fears expressed in Plaintiff's letter to Miller.

Claim 2 alleges that Defendants Padlo, Love, and Cirilo's failure to timely transfer Plaintiff to a less restrictive housing unit denied him equal protection because other similarly situated inmates were transferred earlier. *Id*. at 10.

In Claim 3, also asserted against Defendants Padlo, Love, and Cirilo, Plaintiff claims the failure to transfer Plaintiff or to classify him as lower custody violated the First Amendment. These Defendants allegedly acted in retaliation for Plaintiff's use of the grievance process or his litigation activities. *Id*. at 10–11.

Finally, Claim 4 asserts another retaliation claim, based on Deputy Scruggs's alleged "defrauding [of] the investigation" into Plaintiff's attack. *Id*. at 12. Scruggs's actions were purportedly the result of Plaintiff's intent to file a lawsuit, against Miller and the unidentified Defendant, for failing to protect Plaintiff from the attack. *Id*. at 11–12.

**3.      Discussion**

Plaintiff has not stated a claim upon which relief may be granted. The Court will, however, grant Plaintiff twenty-eight days to further amend the FAC. Any second amended complaint should take into consideration the following.

**A.      *Standards of Law Applicable to Plaintiff's Claims***

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state

law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). That is, jail officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### B. *Due Process Failure-to-Protect Claims Against Miller and Unidentified Defendant*

Pretrial detainees have a right under the Due Process Clause to adequate conditions of detention, including the "right to be free from violence from other inmates," while awaiting trial. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc). A due process violation occurs when the conditions to which the detainee is subjected amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Conditions-of-detention claims are analyzed using a standard of "objective deliberate indifference." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). Under that standard, a detainee must establish the following elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* The application of this standard "will necessarily turn on the facts and circumstances of each particular case." *Id.* (internal quotation marks and alteration omitted).

Although an objective standard must be used in evaluating conditions-of-confinement claims of pretrial detainees, this standard must not be confused with the objective standard used for evaluating claims of negligence under state law. This is because negligence—the "mere lack of due care" by a governmental official—"does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071; *see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (negligence is not actionable under § 1983 because it is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person"). Therefore, a pretrial detainee complaining of unconstitutional conditions of detention must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

Plaintiff's failure-to-protect claim based on other inmates' seeing Plaintiff's criminal discovery documents is implausible for two reasons. First, there is nothing in the FAC supporting a reasonable inference that Miller or the unidentified Defendant "made an intentional decision with respect to" the circulation of these documents. *Gordon*, 888 F.3d at 1125. The documents would

have been provided by the State to Plaintiff's criminal defense counsel and would not have been sent to the jail. Plaintiff simply does not plausibly allege that either Defendant even knew about the documents being seen by other inmates—much less that Defendants knew about them and intentionally decided not to address the issue, rather than mistakenly or negligently failing to appreciate the risk. The bare assertion that Defendants were aware of the problem is conclusory and, as such, is not entitled to "the presumption of truth." *Iqbal*, 556 U.S. at 681.

Plaintiff's failure-to-protect claim based on Plaintiff's letter to Miller, in which Plaintiff expressed fear of being housed with gang members, is also implausible. Though Miller's mocking of Plaintiff's fear was unprofessional, it does not give rise to a reasonable inference that Miller made an intentional decision not to protect Plaintiff. At most, Miller might have been negligent in failing to protect Plaintiff from the attack.

Further, Plaintiff's letter expressed only a vague fear of "gang members." *FAC* at 4. It is not necessary that an inmate identify the precise person who poses a risk of violence against the inmate. *See Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (stating that a defendant may be liable for failing to protect an inmate even if the defendant did not know the inmate "was especially likely to be assaulted by the specific prisoner who eventually committed the assault") (Eighth Amendment context). However, Plaintiff's expression of a generalized fear of unidentified inmates who are members of unidentified gangs simply does not support a plausible inference that "a reasonable official in the circumstances would have appreciated the high degree of risk involved" in failing to investigate Plaintiff's generalized fear. *Gordon*, 888 F.3d at 1125.

Plaintiff may attempt to remedy these deficiencies in a second amended complaint.

   **C.**   ***Equal Protection Claims Against Padlo, Love, and Cirilo***

The Fourteenth Amendment guarantees equal protection of the law. The purpose of the Equal Protection Clause is "to secure every person within the State's jurisdiction against

intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citation and quotation marks omitted). Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Even where similarly situated persons are treated differently by the state, "state action is presumed constitutional and 'will not be set aside if any set of facts reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)). Absent evidence of invidious discrimination, the federal courts should defer to the judgment of prison officials. *See id.*; *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an individual's right to equal protection…. There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

Equal protection claims alleging disparate treatment or classifications generally are subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class, such as race, national origin, or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g.*, *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). However, because inmates are not a protected class, their equal protection claims are subject to rational basis review. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998).

In a rational basis analysis, the relevant inquiry is whether the defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted). A plaintiff can prevail under rational basis review only if (1) the plaintiff is similarly situated with persons who are treated differently by a governmental official, and (2) the official has no rational basis for the disparate treatment. In addition to the deference inherent in a rational basis inquiry, an additional layer of deference to prison officials is required under *Turner v. Safley*, 482 U.S. 78, 89 (1987), which holds that a jail regulation or jail official's action is constitutional so long as it is reasonably related to a legitimate penological interest.[4] *See Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) ("In the prison context . . . even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are reasonably related to legitimate penological interests.") (quotation omitted).

Inmates have no constitutional right or liberty interest in maintaining a particular security classification or in being housed in a particular housing unit. *See Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (Eighth Amendment context). Thus, because the failure to transfer Plaintiff earlier does not imply a violation of fundamental rights, and because inmates are not a suspect or quasi-suspect class, Plaintiff's equal protection claims are subject to a rational basis analysis. *See City of Cleburne*, 473 U.S. at 440; *Webber*, 158 F.3d at 461.

Plaintiff has not plausibly alleged that the other inmates, who were transferred earlier, were similarly situated with Plaintiff. The Court need not accept as true the FAC's conclusory assertion that they were so situated. *See Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of [the

---

[4] Although the *Turner* case arose in the prison context, its deferential analysis applies equally to claims brought by pretrial detainees. *Bull v. City & Cnty. of San Francisco,* 595 F.3d 964, 971 (9th Cir. 2010) (en banc).

complaint's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

Further, the FAC does not support a reasonable inference that Defendants Padlo, Love, and Cirilo acted with "invidious discrimination" in deciding not to transfer Plaintiff earlier. *More*, 984 F.2d at 271 (internal quotation marks omitted). Instead, there is an "obvious alternative explanation"—these Defendants could reasonably have concluded transfer was not appropriate at the time, perhaps because of Plaintiff's behavioral history or because there were no available cells in less restrictive housing. *Iqbal*, 556 U.S. at 682 (internal quotation marks omitted). Defendants also could have determined transferring Plaintiff at that time would be dangerous to Plaintiff. As Plaintiff himself acknowledges, he had expressed fear of being transferred, and Defendants' decision not to transfer him easily could have been a reasonable attempt to keep Plaintiff safe. As a result, Plaintiff has not plausibly alleged the absence of a rational basis for the differential treatment.

For these reasons, the FAC fails to state a colorable equal protection claim.

### D.  *Retaliation Claims*

The First Amendment includes the right to be free from retaliation for exercising constitutional rights. An inmate asserting a retaliation claim must show the following: (1) "a state actor took some adverse action" against the inmate; (2) the defendant took the adverse action "because of" the inmate's exercise of protected conduct; (3) the action "chilled the inmate's exercise" of protected conduct; and (4) the action "did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

"[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of

retaliation is not sufficient."). Rather, when analyzing a prison official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted); *see also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory motivation is not established simply by showing an adverse action by the defendant *after* protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about an inmate's exercise of protected conduct—there

generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

The causal nexus requirement of a retaliation claim is a "but-for" causation test. If the adverse action would have been taken even without the inmate's exercise of protected conduct, the plaintiff cannot satisfy the causation element of the retaliation claim. *Hartman*, 547 U.S. at 260.

Finally, even if an inmate shows that his protected conduct was the but-for cause of an adverse action by a prison official, the inmate's retaliation claim fails so long as the action also reasonably advanced a legitimate penological interest. The government unquestionably has a legitimate interest in maintaining institutional order, safety, and security in its jails and prisons, *Rizzo*, 778 F.2d at 532, and the "plaintiff bears the burden of pleading and proving the absence of legitimate . . . goals for the conduct of which he complains," *Pratt*, 65 F.3d at 806.

   i. <u>Retaliation Claims Against Padlo, Love, and Cirilo</u>

Plaintiff claims Defendants Padlo, Love, and Cirilo acted with a retaliatory motive when they failed to earlier transfer him to a less restrictive housing unit or to classify him as lower custody. For three reasons, these claims are not plausible.

First, nothing in the FAC plausibly suggests that these three particular Defendants knew of Plaintiff's litigation or grievance activities—thus, the Court cannot reasonably infer they acted with a retaliatory motive. The fact Plaintiff has engaged in litigation and used the grievance process does not show that these particular Defendants were aware of Plaintiff's exercise of protected conduct.

Second, Plaintiff has not plausibly alleged that his exercise of protected conduct caused the actions of which he complains. He alleges only that he has engaged in litigation and grievance activities and that, later, he was not transferred or reclassified. This mere circumstance of timing is insufficient to plausibly allege causation. *See Huskey*, 204 F.3d at 899. The vague statement of

a non-defendant deputy that Plaintiff "should . . . know why" he was not yet transferred does not, contrary to Plaintiff's contention, suggest a retaliatory motive.

Third and finally, Plaintiff has not plausibly alleged that the decisions regarding Plaintiff's transfer and classification were not reasonably related to a legitimate governmental interest. There are any number of reasons why these decisions could have been made, such as Plaintiff's disciplinary history, available cell space, or Plaintiff's fear of being transferred. A decision not to transfer Plaintiff based on any of these reasons would be reasonably related to the legitimate interest of promoting order, safety, and security in the jail. *See Rizzo*, 778 F.2d at 532.

  ii.   Retaliation Claim Against Scruggs

Plaintiff asserts Defendant Scruggs lied about the video recording of the attack in retaliation for Plaintiff's telling him he believed deputies were responsible for the attack. This claim is also implausible.

The FAC plausibly alleges neither a retaliatory motive nor causation. There are no allegations reasonably suggesting Scruggs lied at all, much less that he lied because of Plaintiff's exercise of protected conduct, and Plaintiff's accusation of fraud is not supported by any facts. Instead, the obvious alternative explanation is that Scruggs was mistaken or negligent in his reporting about the video, which does not state a colorable retaliation claim. *See Iqbal*, 556 U.S. at 682; *Castro*, 833 F.3d at 1071; *Daniels*, 474 U.S. at 332.

**4.     Standards for Second Amended Complaint**

If Plaintiff chooses to further amend the FAC, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehrler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740,

743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks and alteration omitted).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular constitutional or statutory provision Plaintiff alleges has been violated; (6) facts alleging the elements of the violation are met—for example, Plaintiff must allege facts satisfying the elements of a due process or retaliation claim; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any second amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate, numbered paragraph. Any second amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "Second Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1. The FAC fails to state a claim upon which relief may be granted. Plaintiff has **28 days** within which to file a second amended complaint as described above. If Plaintiff does so, Plaintiff must also file a motion to review the second amended complaint. Alternatively, Plaintiff may file a notice of voluntary dismissal if Plaintiff no longer intends to pursue this case.[5]

2. If Plaintiff does not file a timely second amended complaint, this case may be dismissed with prejudice for failure to state a claim upon which relief may be granted, failure to prosecute, or failure to comply with a Court order. *See* 28 U.S.C. §§ 1915 and 1915A; Fed. R. Civ. P. 41(b).

---

[5] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g). *Spencer v. Barajas*, 140 F.4th 1061, 1066 (9th Cir. 2025).

3. Plaintiff's Motion for Stay (Dkt. 12) is **DENIED**. The Court will not delay this case for 180 days based on issues Plaintiff may or may not face upon his release from custody. If Plaintiff finds he needs an extension of time to file a second amended complaint, he should file a motion requesting one.

DATED: January 6, 2026

_____
Amanda K. Brailsford
U.S. District Court Judge